RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0167n.06
Filed: December 17, 2004

No. 03-5412

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

TIM MONISTERE, et al.,            )
                                         )
           Plaintiff-Appellees,   )
                                         )     ON APPEAL FROM THE UNITED
v.                              )     STATES DISTRICT COURT FOR THE
                                         )     WESTERN DISTRICT OF TENNESSEE
CITY OF MEMPHIS             )     WESTERN DIVISION
                                         )
           Defendant-Appellant  )

Before: KRUPANSKY,[*] COLE, Circuit Judges; COOK, District Judge.[**]

COOK, District Judge. The Plaintiff-Appellees, Tim Monistere and Nathaniel Jones, initiated an action under 42 U.S.C. § 1983, in which they collectively complained that the Defendant-Appellant, City of Memphis, Tennessee ("City") had violated their fundamental rights under the United States Constitution. Because we conclude that Monistere and Jones set forth legally sufficient evidence during the trial to provide the jury with a reasonable basis upon which to find liability against the City, the district court's denial of the City's motion for the entry of a judgment as a matter of law is affirmed.

I.

---

[*]The Honorable Robert B. Krupansky participated in oral arguments in this case, but did not participate in this decision due to his untimely death on November 8, 2004.

[**]The Honorable Julian Abele Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation.

The Appellees, both of whom are employed by the City as police officers, conducted a traffic stop of Floyd Burks during the early morning hours of October 5, 2001. After being cited and subsequently released for an alleged minor traffic violation, Burks traveled to the North Precinct of the City's Police Department where he complained that the two officers had stolen approximately $3,000 from him during the traffic stop. When Monistere and Jones returned to the North Precinct, both of them were (1) advised of Burks' charges, and (2) instructed by the duty officer to remain in separate rooms until the arrival of a representative from the City's Inspectional Services Bureau ("ISB").

After being advised of Burks' complaint, Inspector Janice Pilot[1] authorized Lieutenant Maurice Burton to initiate an investigation of Burks' charges against these two officers. Burton, in turn, assigned ISB Security Squad Sergeants Michael Embrey and Robert McIntyre to process the investigation. Embrey and McIntyre initially interviewed and obtained a recorded statement from Burks. Upon the completion of this interview, they conducted a tape-recorded questioning of Jones in the presence of Michael Bishop, his union representative. At the conclusion of the interview, Jones was asked by Embrey to remove his shirt, trousers and vest. Neither Jones nor Bishop objected to this request. Embrey then requested Jones to remove his tee-shirt. Jones complied. Embrey and McIntyre visually inspected Jones and physically searched his clothing.

Shortly thereafter, Embrey and McIntyre interviewed Monistere who, like Embrey, was advised that the interrogation was a part of an administrative investigation as opposed to a criminal

_____

[1]In October 2001, Inspector Pilot was the Executive Commander of the ISB which is composed of members from the City's Security Squad and the Internal Affairs Division.

2

investigation.[2] The two ISB officers and Monistere were joined by Bishop and Burton for the interview. At the conclusion of the tape-recorded questioning of Monistere, Embrey asked him to remove his clothing. Neither Monistere nor Bishop expressed any objection to this request. Monistere, like Jones, then removed his clothes for an inspection. Neither Monistere nor Jones were physically touched during the incident.

The City's Police Department policy and procedure manual requires the ISB to investigate all complaints against its law enforcement officials. However, there is no written policy that outlines the process by which these investigations are conducted. Moreover, there is no written policy which requires an officer to remove his clothing as part of an ISB investigation.[3] Rather, the standard practice of the City's Police Department is to allow the ISB lead investigator to make the appropriate decisions as to how such an investigation should proceed.

During the trial, Embrey testified that he had neither been advised nor instructed by Pilot or any other superior officer as to how his investigation of Monistere and Jones should be conducted. Pilot concurred, opining that Embrey, as the lead investigator, had the discretion to conduct his investigation in the manner that has now been challenged by the Appellees. Monistere and Jones

---

[2]According to the evidence that was presented during the trial, the City makes a distinction between its administrative and criminal investigations. In an administrative investigation, an officer who has been found to be in violation of a departmental rule or regulation may be disciplined, suspended, or terminated. Moreover, any statement by an officer during an administrative investigation may not be used against him in a court of law. During a criminal investigation, by contrast, an allegedly offending police officer is subject to the same constitutional protections, prohibitions, and limitations as any other citizen.

[3]Tommy Turner, the Vice President of the Memphis Police Association and a veteran of the City's police force, testified that he had never heard of an officer being asked to remove his clothing as part of an ISB investigation prior to learning of the complaints by Monistere and Jones.

3

testified that they cooperated with the investigation out of a collective fear of losing their jobs.[4]

Neither officer was read his Miranda rights prior to the search, and no complaint or formal charges were ever levied against them as a result of Burks' complaint. After the interview, the ISB investigators searched the officers' vehicles, nearby trash cans, and the sewer system after it was pumped, but found no evidence of any money belonging to Burks.

On November 28, 2001, Monistere and Jones filed a lawsuit against the City, asserting claims under 42 U.S.C. § 1983 for its violation of their rights under the Fourth and Fourteenth Amendments of the Constitution, as well as charges of an intentional and negligent infliction of emotional distress, and a conspiracy to inflict emotional distress. With the exception of their § 1983 claims, all of the other allegations were dismissed by the district court prior to trial.

The trial was held before a jury on February 10-11, 2003. At the conclusion of the Appellees' proof, and again at the conclusion of the trial, the City unsuccessfully sought to obtain the entry of a judgment as a matter of law pursuant to Fed. R. Civ. P. 50. On February 12, 2004, the jury returned a verdict against the City and in favor of the two officers in the amount of $22,250.00 each. This timely appeal followed.

II.

An appeals court reviews a district court's denial of a motion for judgment as a matter of law *de novo*, applying the same standard that was applied by the district court. *Sharpe v. Cureton*, 319

---

[4]At trial, the parties disputed the extent to which an officer must cooperate with an administrative investigation. It was the contention of Monistere and Jones that an officer must comply with all requests by an investigator during an administrative investigation. On the other hand, Pilot opined that an officer must comply only with requests for a statement. There was also a disagreement between the parties as to whether Embrey merely requested or ordered the two officers to remove their clothes.

F.3d 259, 266 (6th Cir. 2003). Fed. R. Civ. P. 50(a)(1) states that "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue," then the entry of a judgment as a matter of law for the opposing litigant is appropriate. The motion "may not be granted unless reasonable minds could not differ as to the conclusions to be drawn from the evidence." *McJunkin Corp. v. Mechanicals, Inc.,* 888 F.2d 481, 486 (6th Cir. 1989). An appeals court is not to "weigh the evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury." *Toth v. Yoder Co.,* 749 F.2d 1190, 1194 (6th Cir. 1984). Instead, an appellate court must view the evidence in the light that is most favorable to the opposing party, drawing all reasonable inferences in its favor. *Bowman v. Corrections Corp. of America*, 350 F.3d 537, 544 (6th Cir. 2003).

III.

The statute upon which Monistere and Jones rely is 42 U.S.C. § 1983, which reads, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

In order to establish liability under this statute, the aggrieved parties must demonstrate that they were (1) deprived of a right that has been secured by the Constitution or laws of the United States, and (2) subjected, or caused to be subjected, to this deprivation by a person who was acting under the color of state law at the time of the offending conduct. *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000) Since the parties do not dispute that the constitutional rights of

5

Monistere and Jones were violated by the strip searches,[5] we turn to the question as to whether the City may be held liable for these violations because one of its employees had acted under the color of state law at the time of his investigation.

In *Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658 (1978), the Supreme Court held that municipalities may be subject to damages under 42 U.S.C. § 1983. However, the *Monell* court made it clear that liability under this statute may not imposed upon a municipality merely because it employed an individual who engaged in some form of unconstitutional conduct. *See Monell*, 436 U.S. at 691. Instead, *Monell* and its progeny have declared that a municipality is subject to liability under § 1983 only if the claimed injuries were caused by a policy or custom of the municipality: "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. However, the challenged policy need not be unconstitutional. Rather, a municipality may be liable if an employee's application of an otherwise constitutional policy leads to an unconstitutional result. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Brown v. Shaner*, 172 F.3d 927, 930 (6th Cir. 1999).

In its defense, the City insists that it never maintained any custom or policy which resulted in the injuries that were allegedly sustained by Monistere and Jones in October 2001. Prior to the commencement of the trial in the district court, the parties stipulated that, at the time of the

---

[5]The City concedes that the directive to Monistere and Jones from Embrey which resulted in the removal of their clothing "clearly falls within the pale and scope of the Fourth Amendment's prohibition on warrantless searches in the absence of probable cause, and this is clearly the theory under which Appellees pursued their claims." Appellant's Final Br. at 14.

investigation, the City had not maintained any written policy which addressed the obligation, if any, of an officer under administrative investigation to subject himself to a demand or a request for a strip search.

Accordingly, we must turn to a determination as whether the City maintained a custom, as this word is applied within the context of § 1983 liability. In 1996, we wrote:

> A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law.".... In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out state policy."....It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law....

*Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507-08 (6th Cir. 1996) (internal citations omitted).

On this issue, the City submits that Embrey's directives to Monistere and Jones constituted a single, isolated occurrence – and nothing more. In support of this contention, the City cites the testimony of Tommy Turner, the Vice President of the Memphis Police Association, who stated that he was not aware of any other occasion when an officer was ordered to remove his clothes as part of an administrative investigation. In rebuttal, Monistere and Jones claim that the custom upon which they rely is the City's practice of allowing ISB sergeants, such as Embrey and McIntyre, to conduct their investigations without any defined parameters. It is their collective belief that, even though the City did not maintain any written policy relating to administrative investigations, Embrey was "vested with the authority to conduct these investigations and the authority to determine the policy and manner of conducting these investigations." Appellees' Final Br. at 21.

We agree with Monistere and Jones. At trial, they presented the testimony of Janice Pilot, the ISB Executive Commander who testified that although the police manual did not specify the

manner in which administrative investigations were conducted, the "unwritten manner" was to allow the lead investigator to make decisions as to how to conduct the investigations. Similarly, Embrey admitted that it was "standard practice" for the lead investigator to make decisions as to how to proceed with an investigation. Based on this evidence, it is our determination that it was reasonable for a jury to conclude that the City had a practice of granting its lead investigators the complete discretion to conduct their own investigations. Accordingly, it is this practice – and not Embrey's specific decision to order the strip search – that represented a custom "so widespread as to have the force of law." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Alternatively, the jury could have concluded that Embrey's decision to order the strip search of Monistere and Jones was sufficient to impose municipal liability. The Supreme Court has stated that, under appropriate circumstances, liability may be imposed upon a municipality for a single decision by a policymaker. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986). However, not every single decision by an officer automatically subjects a municipality to liability under 42 U.S.C. § 1983. Instead, "municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered." *Id*. at 481. Whether a particular official has "final policymaking authority" is a question of state law. As the Supreme Court stated in *Pembaur*, the "authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *Id*. at 483.

As a counter-argument to the Appellees' position, the City contends that its Code of Ordinances ("City Code") designates the Director of Police Services as the only person with the

8

requisite final policymaking authority within its Police Department. This City Code states:

> The director of police services shall have general care of the peace of the city, and shall see that all subordinates do their duty in preserving the same. He shall have control over the entire police force, and see to the execution of every ordinance. He...shall exercise and discharge all such powers and functions as pertain to his office and perform such other duties as may be required of him by this Code or other ordinance.

Memphis, TN., Code § 28-3 (1967).

Although the City Code arguably establishes that the Director of Police Services has the final policymaking authority for all police department activities, this Court need not end its inquiry here. As we stated in *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993), in order to determine whether final authority to make municipal policy is vested in a particular official, it is imperative that we examine the applicable state law, including "statutes, ordinances, and regulations," as well as "less formal sources of law, such as local practice and custom."

Notwithstanding the operative language within the Code, this Court concludes that there is sufficient evidence to demonstrate that Embrey had the requisite policymaking authority inasmuch as he had been delegated the authority to control his own investigations. While there were no written procedures which govern these investigations, the Executive Commander of the ISB testified that it was the "unwritten manner" of her unit to allow the lead investigator to have full control over the conduct of an investigation. Embrey also opined that, although his challenged directive relating to the removal of the officers' clothing was not specifically addressed in the police manual, it was his belief that he, as the lead investigator, had the authority to order the strip search.

The City also argues that Embrey did not have final policymaking authority, citing the plurality opinion in *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) for the proposition that "[i]f

9

the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability." *Id.* at 126. In 1993, this Court declared that the "[m]ere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (citing *Praprotnik,* 485 U.S. at 127).

Contrary to the City's position on this issue, the facts presented during the trial demonstrate that Embrey did not merely exercise discretion but rather acted as a final policymaker within the context of this case. During the trial, Embrey testified that, in his capacity as the lead investigator, he had the right to make decisions regarding his investigation of Monistere and Jones. His decision was final. There is no evidence in this record that he received any direction from his supervisors until after the strip search had been completed. Pilot neither reviewed nor challenged his decision-making authority. In fact, Embrey testified that she rarely intervened in his investigations. Furthermore, there is no evidence that Embrey was constrained by the City's "unwritten" policy which governed internal investigations because it was the practice within the Police Department to give unfettered discretion to its ISB members. In sum, the record clearly supports the conclusion that Embrey's decision was (1) final, (2) not reviewable, and (3) unconstrained by the existing policies and practices of his supervisory officers. It is our judgment that, when applying the standards of *Feliciano*, Embrey was delegated final policymaking authority which is sufficient to impose municipal liability upon the City under § 1983.[6]

---

[6]Since this Court finds that Embrey was delegated final policymaking authority with respect to the conduct of ISB investigations, it need not determine whether the City ratified Embrey's conduct. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *see also*

Finally, the City asserts that Monistere and Jones have failed to establish the requisite causation element. In order to establish their § 1983 claims, Monistere and Jones must demonstrate that the policy or custom, which they have attributed to a municipal policymaker, directly caused their injuries. Several years ago, the Supreme Court declared that an aggrieved party must demonstrate

> that through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Like the district court below, this Court concludes that Monistere and Jones have presented facially legally sufficient evidence upon which to establish the requisite "affirmative link between the policy and particular constitutional violation alleged." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985). During the trial, they offered the testimony of Embrey and Pilot to demonstrate that the City had a custom of allowing ISB officers to have unfettered discretion in conducting administrative investigations. The City's policy of specifically delegating this authority to Embrey directly resulted in the strip search that was imposed upon Monistere and Jones. It was Embrey's firm belief that he was within his right, as the lead investigative officer, to order the removal of their clothing as part of the investigation. Furthermore, it appears that the jury credited the statements by Monistere and Jones, both of whom expressed the belief that they had no choice but to comply with the administrative investigation. Given this evidence, it is reasonable to conclude that the jury

---

*Ulrich v. City & County of San Francisco*, 308 F.3d 968, 985 (9th Cir. 2002) (Plaintiff may establish municipal liability by "showing that an official with final policymaking authority either delegated that authority to, *or* ratified the decision of, a subordinate") (emphasis added).

concluded that an "affirmative link" existed between the City's custom and the resulting constitutional violations. *Id.* Thus, when evaluating the evidence in the light most favorable to Monistere and Jones, this Court concludes that the City's policy of allowing its sergeants unfettered discretion to conduct administrative investigations directly caused the constitutional deprivations that were suffered by these two officers.

For the reasons that are stated above, this Court affirms the district court's denial of the City's motion for judgment as a matter of law.