NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0696n.06
Filed: August 11, 2005

No. 04-4039

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| R. BLAINE JORG, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| CITY OF CINCINNATI; CARL L. PARROTT, | ) | |
| JR.; HAMILTON COUNTY, OHIO | ) | O P I N I O N |
| | ) | |
| *Defendants-Appellees*. | ) | |

BEFORE:    MOORE and COLE, Circuit Judges; and WISEMAN, Senior District Judge.[*]

    **R. GUY COLE, JR., Circuit Judge.**  R. Blaine Jorg appeals the district court's dismissal

of his federal malicious prosecution complaint, brought under 42 U.S.C. § 1983, against the City of

Cincinnati ("the City"), Hamilton County ("the County"), and the County Coroner.  The district

court dismissed Jorg's claims against the County and its Coroner, concluding that the Coroner was

not a "policymaker" in this instance.  The court also dismissed Jorg's claims against the City

because he failed to assert actionable conduct by the City.  For the reasons set forth below, we

**AFFIRM** the district court's judgment.

**I.**

---

    [*]The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District
of Tennessee, sitting by designation.

On November 7, 2000, Cincinnati police officer R. Blaine Jorg was on duty with his partner, Patrick Caton, near a Sunoco station when they received a call from fellow officer David Hunter. Hunter told them that an individual who had previously assaulted him was in the carryout store next to the Sunoco station. Jorg and Caton confronted the suspect, later identified as Roger Owensby, Jr., and conducted a pat-down search for weapons. When Owensby saw Hunter, he became nervous and attempted to flee. Jorg tackled Owensby, and together, the officers handcuffed and arrested Owensby. The officers may have also maced Owensby during the struggle. At some point between the arrest and arrival at the police station, Owensby died. Following a series of events that will be discussed in more detail below, Jorg was prosecuted for Owensby's death. Although the case against Jorg was ultimately dismissed, Jorg pursued a § 1983 claim for damages against the City, the County, and the Coroner, for causing what he believes was a false and malicious prosecution.

What follows are the allegations from Jorg's complaint which form the basis of his theory of the case. Around 1:00 a.m. on November 8, eleven witnesses were interviewed by the Cincinnati Police. One witness, Ariel St. Claire, told the police that she saw Owensby "struggle hard" when the police tried to arrest him, and that the police "struck" Owensby in the back while handcuffing him. She also stated that Owensby appeared conscious when he was placed in the police car. Another witness, George Weaver, told the police that a bald, white, stocky officer choked Owensby. Jorg claims that Weaver was ultimately deemed unreliable and was therefore not called as a witness in the criminal trial that was later initiated against Jorg. No further information is provided about the other witness' statements.

Jorg alleges that the initial autopsy of Owensby, performed by Daniel Schultz of the Hamilton County Coroner's office on November 8, at 8:30 a.m., indicated that Owensby had no visible neck injuries. Later that afternoon, however, the Hamilton County Coroner, Carl L. Parrott, publicly stated at a City Council meeting that Owensby's death was caused by "mechanical asphyxia," meaning that he died of either a "chokehold" or the "piling of restraints," or both. Jorg claims that the Coroner made this statement, knowing it was false, to "appease vocal members of the African-American community who were clamoring for blame for the death of Roger Owensby, Jr. to be placed on a police officer." Jorg also alleges that the Coroner knew that Owensby had actually died of a cardiac event, but changed the final autopsy report to mirror his public statement about the chokehold. The Coroner's comments were widely reported in the media, and were repeated by Cincinnati City Council members. Accordingly, Jorg believes that Ariel St. Claire was influenced to amend her previous statement to the police—that she witnessed an officer strike Owensby in the back—to add that she saw a police officer "choke" Owensby.

Jorg alleges that as a result of the Coroner's statement, the witnesses' statements, and the City Council's public call for an investigation, Jorg was charged with involuntary manslaughter and assault for strangling Owensby in the course of apprehending him. On January 25, 2001, the Cincinnati Police Division suspended Jorg without pay while the indictment against him was pending. Eventually, on November 7, 2001, the charges against Jorg were dismissed. The Cincinnati Police Division thereafter reinstated Jorg and gave him back pay for the time he was suspended.

On May 28, 2002, Jorg filed a § 1983 action against the City, the County, and Coroner Carl Parrott, Jr., in Parrott's official capacity, claiming that these defendants together or independently caused Jorg to be falsely and maliciously prosecuted for Owensby's death. Jorg's complaint also alleged defamation and procedural due process violations.

The defendants filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The district court dismissed, with prejudice, all claims against the Coroner, finding that the Coroner did not have any "policymaking authority" such that he could be held liable under § 1983. The court also dismissed the defamation and procedural due process claims. The City and County then filed motions for reconsideration, requesting that the remaining malicious prosecution claim against them be dismissed. Their motions were granted. The court held that Jorg had not specifically implicated any actor in the County other than the Coroner. The court also held that Jorg had not specifically implicated anyone acting on behalf of the City. This concluded Jorg's case in the district court. Jorg has chosen to appeal only the district court's dismissal of his malicious prosecution claim.

## II.

We review *de novo* the district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002). "In reviewing a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff[ ] and determine whether the plaintiff[ ] undoubtedly can prove no set of facts in support of the claims that would entitle [him] to relief." *Id*. While we should generally accept all of the plaintiff's factual allegations as true, we need not make unwarranted

factual inferences. *Id*. Although the standard of reviewing a complaint is quite liberal, the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citations omitted).

Section 1983 creates a federal cause of action against state or local officials who deprive a person of a federal right while acting under the color of state law. 42 U.S.C. § 1983. To state a valid claim under § 1983, the plaintiff must allege: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a right secured to him by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

**A. Jorg's Claim Against the County Coroner**

Jorg sued the County Coroner solely in the Coroner's official capacity. We treat an official capacity suit as a suit against the municipality itself. *Leach v. Shelby County*, 891 F.2d 1241, 1245 (6th Cir. 1989). As Jorg has not sued any other County officials, our analysis of his claim against the County will consist solely of our review of his claim against the Coroner.

A municipality may be held liable under § 1983 for a rights violation when either the municipality had an unlawful policy or practice that caused the rights violation, or a municipal "policymaker" directly caused the rights violation. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."). Here, as Jorg has not alleged any long-standing

policy or practice of malicious prosecution by the County, the relevant inquiry is whether a County policymaker directly caused the rights violation.

Jorg argues that the Coroner is a municipal "policymaker," thereby making the County liable for the direct consequences of the Coroner's alleged falsification and publication of Owensby's autopsy report. The district court determined that the Coroner was not a policymaker because a cause of death determination does not constitute "policymaking" as the term is ordinarily used. We agree.

Whether a municipal official is a policymaker depends on the conduct in question; the same official may be a policymaker in some situations but not in others. *Pembaur*, 475 U.S. at 483. "[N]ot every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Id*. at 481. Otherwise, the municipal liability standard would be nothing more than a *respondeat superior* standard—a move which has been expressly forbidden by the Supreme Court. *Id*. Accordingly, an official is a "policymaker" only when state or local law *vests* in him the "authority to establish municipal policy with respect to the action ordered," and such authority is "final." *Id*. *See also Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993). "[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Thus, in order for a particular decision by a municipal official to be a "policy" decision, state or local law must give the official the authority to choose from various alternatives when making that particular decision.

When municipal officials have been deemed to be making policy decisions in the past, it has not been because they were vested with the authority to make factual assessments of a particular

situation, but rather, because they were vested with the authority to respond to that situation. *See Pembaur*, 475 U.S. at 473-77 (finding that the county prosecutor's decision to have police officers use an axe to break down a doctor's door was a policy decision); *Meyers*, 14 F.3d at 1116-18 (finding that a City Manager's decision to discharge the Fire Chief in violation of the First Amendment was a policy decision); *Monistere v. City of Memphis*, No. 03-5412, 2004 WL 2913348, at *815 (6th Cir. 2004) (finding that a police chief's decision to conduct an immediate strip search of his own officers when they were accused of stealing a motorist's money after a traffic stop was a policy decision); *Brotherton v. Cleveland*, 173 F.3d 552, 562 (6th Cir. 1999) (implying that the Coroner's decision to establish a protocol for organ removal was a policy decision). Accordingly, there is a distinction between "policymaking" authority, which entails a certain amount of discretion to choose among various plausible alternatives, and "factfinding" authority, which involves assessing the fixed realities of a situation. *See* Merriam Webster's Collegiate Dictionary 416 (1995) (defining "fact finder" as "one that tries to determine the realities of a case, situation . . . an impartial examiner designated by a government agency to appraise the facts underlying a particular matter").

Here, Jorg has not shown that the Coroner was vested with any policymaking authority with regards to determining and reporting causes of death. Instead, the Corner was vested with the authority to make a factual determination as to a person's cause of death. State law clearly mandates that the Coroner must determine the cause of death. OHIO REV. CODE ANN § 313.09. While certain of the Coroner's activities might constitute policymaking, *see Brotherton*, 173 F.3d 552, this is not one of them. Any malfeasance on the Coroner's part therefore did not result from him exercising vested policymaking authority. While he may have "chosen" to falsify the report, as alleged, the

state and local laws do not offer him any discretion to take this course of conduct after the initial factual determination is made. Jorg has attempted to focus our inquiry on what he alleges the Coroner did wrong, rather than on what type of authority the municipality has vested in the Coroner. To ignore this distinction would lead to the blurring of the municipal liability and the *respondeat superior* standards. Accordingly, the Coroner was not, in this instance, a policymaker for the County.

Furthermore, although Jorg claims that the Coroner's misconduct included his publicizing the false cause of death, Jorg has pointed to no state or local law which vests the Coroner with any policymaking authority in this regard. If the Coroner answered the City Council's questions about Owensby's cause of death, these statements are outside the realm of his statutory duties. Moreover, the most damaging conduct by the Coroner would be his alleged falsification of the autopsy report, and the report is automatically public record. OHIO REV. CODE ANN. § 313.10. As previously discussed, the Coroner was not a policymaker with regards to his cause of death determinations. Therefore, because no "policy" decision is at issue here, the Coroner, and therefore the County, cannot be held liable under § 1983.[1]

Finally, we note that the parties have focused the weight of their arguments on whether the Coroner's conduct was "final," and not on whether his conduct was a "policy" decision. Because

---

[1]We also note that the repeating of, or publication of, a finding, as opposed to the making of the finding, is not actionable conduct under the federal malicious prosecution doctrine. *See infra* Part B.

we find that the Coroner's conduct was not "policymaking," we need not decide whether his conduct was "final."

Therefore, we AFFIRM the district court's dismissal of the County Coroner and County from this suit.

**B.  Jorg's Claim Against the City**

Jorg's complaint also alleges that the City, acting together with or independently of the County and County Coroner, caused Jorg to be falsely and maliciously prosecuted without probable cause.  The only tangible allegations against the City are:  (1) that it gave the Hamilton County Grand Jury the false testimony of Ariel St. Claire and George Weaver; and (2) that the City Council members publicly repeated the Coroner's finding that Owensby was killed by a chokehold, and called for an immediate grand jury investigation.  The district court dismissed the City from this suit because the complaint did not identify any specific defendants acting on the City's behalf.

First, the complaint offers no further details regarding how the City "gave" the Grand Jury this evidence.  The complaint alleges that the police detectives interviewed these witnesses and knew that these witnesses were lying.  However, even if we were to infer from the complaint that the police provided the witness interview statements to the Grand Jury, Jorg makes no allegation that the detectives responsible for obtaining these witness statements were official "policymakers" such that the City would be the "person" acting under color of state law.[2]  Without knowing exactly which

---

[2]The complaint does specifically name the City Manager and Police Chief; however, the complaint does so with regards to the plaintiff's due process allegation against the City, not for the malicious prosecution claim.

detective or officer knowingly provided false witness statements to the Grand Jury, we cannot begin to analyze whether that individual is a "policymaker."

Second, Jorg argues that City Council members caused him to be prosecuted by repeating the Coroner's findings and urging an investigation. Beyond merely asserting that the City Council knew that Owensby was not killed by the police, Jorg has not asserted anything to support the City's culpability. Jorg has not, for example, alleged how the City Council members would have known that the Coroner's report was false.

Moreover, the City Council members' conduct—publicly calling for an investigation into the manner of Owensby's death—is not the type of conduct for which one could be liable under the federal malicious prosecution doctrine. We have previously stated that "named defendants 'cannot be held liable for malicious prosecution when [they] did not make the decision to prosecute [the plaintiff].'" *McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005) (quoting *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002)). In *Skousen*, the plaintiff sued a state trooper for malicious prosecution, alleging that he arrested her for assault without probable cause, which caused her to be prosecuted. 305 F.3d at 523. We noted that "[t]here is no evidence that [the trooper] made or *even was consulted* with regard to the decision to prosecute Skousen." *Id*. at 528 (emphasis added). Even if this language in *Skousen* could be read as permitting a malicious prosecution claim against government actors who are "consulted" by the prosecutor—such as against those governmental actors with investigative duties who by their very nature play a key role in the decision to prosecute a person—there is no support for extending liability to those governmental actors who merely urge prosecution, but who have no effect on the probable cause

determination by the prosecutor. *See Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002) (finding that a federal malicious prosecution claim may be brought against state actors with investigative roles, such as a coroner). The merits of a malicious prosecution claim will turn on whether legitimate probable cause existed to prosecute the plaintiff, not on what other ill motivations may have underlain the decision to prosecute. *See Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001). Therefore, we see no reason to extend the federal malicious prosecution claim to the City's alleged exertion of political pressure on the prosecutor.

Because Jorg has not identified any City actors who gave the Grand Jury witness statements, and Jorg has not sufficiently alleged any actionable conduct by City Council, we AFFIRM the district court's judgment dismissing the City from the suit. As we have concluded that neither the County, though its Coroner, nor the City, is liable under § 1983 for causing Jorg to be falsely and maliciously prosecuted, we need not reach the merits of the malicious prosecution claim.

III.

For the preceding reasons, we hereby **AFFIRM** the judgment of the district court.