NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0423n.06
Filed: July 16, 2008

No. 07-5549

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| STEPHEN MANN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MICHAEL HELMIG, in his capacity as | ) | EASTERN DISTRICT OF KENTUCKY |
| Sheriff of Boone County. | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: MARTIN, GIBBONS, and GRIFFIN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff-appellant Stephen Mann appeals the

district court's grant of summary judgment to defendant-appellee Michael Helmig, Sheriff of Boone

County. Mann argues that the district court erred in granting Helmig's motion for summary

judgment on Mann's § 1983 claims and denying Mann's motion for summary judgment. For the

following reasons, we affirm the district court's decision.

I.

The district court recounted the undisputed facts underlying Mann's § 1983 claim as follows:

Plaintiff Stephen Mann ("Mann") is a resident of Burlington, Kentucky. On or about
December 1, 1999, the Kenton County District Court entered a Domestic Violence
Order ("DVO") against Mann based on a petition filed by Mann's sister, Gladys

Wagner. (Exh. 1, Def. MSJ) Among other things, the DVO restrained Mann from purchasing, owning, or possessing firearms. (Exh. 2, Def. MSJ)

At Wagner's request, the Kenton County District Court extended the DVO several times. In 2002, Mann petitioned the court to amend the DVO to lift the firearm restrictions on the grounds that he and Wagner were not "intimate partners" within the meaning of 18 U.S.C. § 922(g).

On November 6, 2002, the Kenton County court issued an opinion stating that it "may," depending on the relationship of the parties, be a violation of 18 U.S.C. § 922(g) for Mann to possess firearms while subject to a DVO. (Exh. 4, Def. MSJ) The court further stated that it would "issue a new order of protection incorporating the appropriate statement of the law into its order and extending the order for one additional year." (Id.) The court then entered an Amended DVO which stated: "Pursuant to 18 U.S.C. § 922(g)(8), it *may* be a federal violation to purchase, receive or possess a firearm or ammunition while subject to this order." (Exh. 5, Def. MSJ) (emphasis added)

On December 1, 2003, the Amended DVO bearing the same language was extended through December 1, 2005. (Exh. 6, Def. MSJ)

On May 16, 2005, while the Amended DVO was still in effect, the Boone County Sheriff's Department received a call reporting gunshots at [Mann's] residence. Deputy Chris Combs responded to the call.

Deputy Combs arrived at [Mann's] house and approached the front door. [Mann] opened the door and let Combs into the house. Combs told [Mann] he had received a "shots fired" call and asked if [Mann] was the source of the shots. [Mann] stated that he had been shooting at a target in his backyard. [Mann] then led Combs through the kitchen, out the back door and onto the porch, where he showed Combs three rifles sitting on his picnic table. Combs thanked [Mann] for his cooperation and left.

When he returned to his car, Deputy Combs received a message that the person who had made the "shots fired" call wanted to talk with him. That person was Mark Mann, [Mann's] brother, who lived next door. Deputy Combs drove next door, where he was approached by Mark Mann's wife and another woman. After Deputy Combs explained that it was not illegal for [Mann] to fire his guns in his own back yard in that part of the county, the women told Combs that [Mann] was subject to a DVO.

Deputy Combs returned to [Mann's] property to discuss the DVO with him. By then, [Mann] had returned to the back yard and resumed firing his guns. Deputy Combs told [Mann] to unload and put his weapon down, which [Mann] did. Deputy Combs asked [Mann] if there was a DVO against him, and [Mann] said yes. [Mann] and

Deputy Combs went into the house where [Mann] showed Combs a copy of the amended DVO entered on December 1, 2003. [Mann] stated that it did not prevent him from possessing firearms because he was not an "intimate partner" of the person who took out the DVO. Reviewing the language of the amended DVO, however, Deputy Combs was unsure whether it restricted [Mann] from having guns.

[Mann] then gave Deputy Combs the phone number of his attorney who had represented him in connection with the DVO. Combs tried to reach that attorney but could not. Combs then tried to reach an attorney at the Boone County Attorney's Office but could not do so. Combs then called the Commonwealth Attorney's Office in Boone County and spoke to an attorney in that office regarding the situation. The attorney told Combs that [Mann] was not permitted to possess firearms if he was subject to an active DVO.

Deputy Combs then told [Mann] that he was going to take all his firearms and asked where they were located. Combs and another deputy who had arrived retrieved a total of six guns and a box of ammunition. After giving [Mann] a receipt for the weapons, the deputies left and took the items to the Boone County Sheriff's Department where the weapons were logged into the property room.

Sometime thereafter, the Boone County Sheriff's office informed [Mann] that he could come retrieve his guns, but [Mann] apparently has not done so.

*Mann v. Helmig*, 2007 U.S. Dist. LEXIS 23839, at *4-5 (E.D. Ky. March 30, 2007).

On August 2, 2005, Mann filed suit against Boone County Sheriff Helmig in his official capacity pursuant to 42 U.S.C. § 1983.[1] In his complaint, Mann alleged that Boone County had violated his Second, Fourth, Fifth, and Fourteenth Amendment rights; in addition, Mann advanced a claim of conversion under Kentucky law. Both parties subsequently filed motions for summary judgment. The district court granted Helmig's motion for summary judgment and denied Mann's motion for summary judgment, concluding that "plaintiff has not shown, as a matter of law, that this single, isolated incident was part of any pattern of unconstitutional conduct by Boone County, or that

---

[1]As he makes clear in his reply brief, Mann's "complaint did not name Sheriff Helmig in his individual capacity, but only in his official capacity. As such, his cause of action is against Boone County."

-3-

it was otherwise taken pursuant to any County policy or custom." *Mann*, 2007 U.S. Dist. LEXIS 23839, at *8. In turn, the district court dismissed Mann's claim of conversion, declining to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c).

## II.

We review *de novo* the grant of summary judgment by a district court. *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 246 (6th Cir. 2000). Summary judgment may be granted only if there are no genuine issues of material fact and one party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a district court's decision to grant summary judgment, we view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

As Mann states unequivocally in his reply brief, his cause of action pursuant to § 1983 is against Sheriff Helmig in his official capacity. As a result, Mann's cause of action is a suit against Boone County. *Moore v. City of Harriman*, 272 F.3d 769, 776 (6th Cir. 2001) (*en banc*) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office . . . as such, it is no different from a suit against the State itself.") (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

Pursuant to a § 1983 suit, "A municipal liability claim . . . must be examined by applying a two-pronged inquiry: (1) Whether the plaintiff has asserted the deprivation of a constitutional right at all; and (2) Whether the [municipality] is responsible for that violation." *Doe v. Claiborne*

*County*, 103 F.3d 495, 505-06 (6th Cir. 1996). In satisfying the second prong of this inquiry, "A plaintiff who sues a municipality for a constitutional violation under § 1983 must prove that the municipality's policy or custom caused the alleged injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)).

In order to prove the existence of a municipality's policy or custom, plaintiffs "can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). In his appeal, Mann pursues the second option, arguing that Deputy Combs confiscated Mann's firearms and ammunition pursuant to a policy of the Boone County Sheriff's department.

However,

> not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986). Thus, Mann must demonstrate that Deputy Combs acted pursuant to a policy established by an individual who possessed final decision-making authority and that this policy caused the alleged injuries. As the district court correctly noted, Mann cannot satisfy this requirement.

1.

The Supreme Court has defined the term "policy" as a "word [that] generally implies a course

of action consciously chosen from among various alternatives." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). At different stages of this litigation, Mann has vacillated between two different arguments as to what policy was the cause of his alleged constitutional damages.

In his brief before this court, Mann describes what he contends to be the policy that caused his alleged injury: "it was the policy or custom of the Boone County Sheriff's Office to follow the advice of the County or Commonwealth Attorney when a deputy was unsure how deal [sic] with a certain situation." (Appellant's Br. 18-19.) Mann repeats this characterization of the policy or custom of which he complains on a number of other occasions: "Boone County's Custom was to follow advice of Commonwealth Attorney" (Appellant's Br. 17); "Following the advice of the Commonwealth Attorney was Boone County's plan of action" (Appellant's Br. 19); "[I]t was the custom of the Boone County Sheriff to always follow the direction of the Commonwealth Attorney" (Appellant's Br. 10); "The decision to confiscate Mann's firearms was made by Deputy Combs, who had sought and followed the advice of a Commonwealth Attorney . . . a procedure that is customary practice for the Boone County Sheriff's Office." (JA 139). This argument thus identifies the policy of consulting an attorney as the cause of Mann's alleged damages.

At oral argument, however, Mann appeared to contend that he was in fact contesting a different policy – the Commonwealth Attorney's actual advice to Deputy Combs to seize Mann's firearms and ammunition; and it was this "policy" that caused Mann's constitutional damages. This second characterization of the policy also appears at least once in Mann's brief before this court: "In the case at bar . . . the policy decision at issue was in fact unconstitutional. It should go without saying that the unlawful confiscation of a citizen's firearms from his or her own home violates the constitution." (Appellant's Br. 20). However, regardless of which characterization Mann intends

to pursue in his appeal, his claims lack merit.

2.

Mann's first characterization of the Boone County policy – consulting an attorney and following his advice when unsure how to proceed – fails because he can neither satisfy the causation element of a § 1983 action, nor provide sufficient evidence of the existence of a facially constitutional policy.

In *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985), the Supreme Court explained how the causation element of a § 1983 claim functions when the policy in question was not itself unconstitutional:

> [S]ome limitation must be placed on establishing municipal liability through policies that are not themselves unconstitutional, or the test set out in Monell will become a dead letter. Obviously, if one retreats far enough from a constitutional violation some municipal "policy" can be identified behind almost any such harm inflicted by a municipal official; for example, [the police officer] would never have killed [the defendant's husband] if Oklahoma City did not have a "policy" of establishing a police force. But *Monell* must be taken to require proof of a city policy different in kind from this latter example before a claim can be sent to a jury on the theory that a particular violation was "caused" by the municipal "policy." At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged.

*Id.* at 823; *see also City of Springfield v. Kibbe*, 480 U.S. 257, 267-268 (1987) ("In some sense, of course, almost any injury inflicted by a municipal agent or employee ultimately can be traced to some municipal policy. Finding § 1983's causation requirement satisfied by such a remote connection, however, would eviscerate *Monell*'s distinction, based on the language and history of § 1983, between vicarious liability and liability predicated on the municipality's own constitutional violations." (emphasis in original)). Thus "[p]roof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link'

between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact." *Spell v. McDaniel*, 824 F.2d 1380, 1388 (4th Cir. 1987); *see also Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996) ("A plaintiff must also establish that the government policy or custom was the proximate cause of the injuries sustained."); *King v. Massarweh*, 782 F.2d 825, 828 (9th Cir. 1986) (noting that the inquiry under § 1983 is whether the actions in question "proximately caused" the alleged damages); *Francis v. Barlow*, 2006 U.S. Dist. LEXIS 30394, at *11 (W.D. Ky. May 16, 2006) ("A § 1983 complaint must allege that specific conduct by the defendant was the proximate cause of the constitutional injury.").

While Mann is somewhat unclear on his theory of causation, it would seem that his claim requires the following argument: the policy of "follow[ing] the advice of the County or Commonwealth Attorney when a deputy was unsure how deal [sic] with a certain situation" was the proximate cause of Mann's alleged injuries. This theory of causation seems to be of the precise type the Supreme Court sought to foreclose in *Tuttle*. Indeed, one can always "retreat [] far enough" to find a policy that "caused" the alleged constitutional violation. *See Tuttle*, 471 U.S. at 823. But the proximate cause of Mann's alleged constitutional injuries was either the ambiguity of his DVO, the erroneous advice of the Commonwealth Attorney, or, less directly, the inability of Deputy Combs to contact Mann's attorney. There simply is too tenuous a connection between the policy of contacting and following the advice of the county or Commonwealth Attorney and the injuries sustained by Mann. Thus, it cannot be said that there is an affirmative link between the "policy" and the confiscation of Mann's firearms and ammunition. In turn, Mann has not satisfied the causation element of his § 1983 claim, a conclusion that justifies the district court's grant of Helmig's motion for summary judgment.

Moreover, Mann provides proof of only one incident as the basis for his claim that there exists a county policy that caused his alleged damages. Mann does correctly note that in some cases, proof of a single incident where a municipal official caused constitutional injuries is sufficient to demonstrate the existence of an unconstitutional policy or custom: "The Supreme Court has stated that, under appropriate circumstances, liability may be imposed upon a municipality for a single decision by a policymaker." *Monistere v. City of Memphis*, 115 F. App'x 845, 851 (6th Cir. 2004) (citing *Pembaur*, 475 U.S. at 480). However, given the policy of which Mann complains, this is not the case: "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Tuttle*, 471 U.S. at 824; *accord Bills v. Aseltine*, 958 F.2d 697, 708 (6th Cir. 1992).

In the instant case, the policy of consulting with the Commonwealth Attorney is clearly not itself unconstitutional. Thus to survive summary judgment, Mann cannot simply rely on one incident to satisfy his burden.

For these reasons, Mann's claims, based upon his first characterization of the Boone County policy, fail.

3.

The second characterization of Mann's argument, offered at oral argument and at one point in his brief (Appellant's Br. 20), is that the attorney's decision to tell Deputy Combs to confiscate Mann's weapons was the policy causing his constitutional injuries.

The obvious difficulty with this argument is that Mann did not sue the Commonwealth Attorney or his agents, and thus their decisions cannot be challenged here. Certainly, there is no

basis in this record for concluding that the Commonwealth Attorney creates policy for Boone County, the only defendant in this case. This iteration of Mann's argument fares no better than his first version.

IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment.